Stanley E. COUTU et al.,
Plaintiffs-Appellants,

v.

UNIVERSITIES RESEARCH ASSOCIATION, INC., Defendant-Appellee.

No. 78–1165.

United States Court of Appeals,
Seventh Circuit.

Heard Dec. 6, 1978.

Decided April 4, 1979.

Robert Jay Nye, Oak Park, Ill., for plaintiffs-appellants.

Robert E. Mann, Chicago, Ill., for defendant-appellee.

Before CASTLE, Senior Circuit Judge, and CUMMINGS and PELL, Circuit Judges.

CUMMINGS, Circuit Judge.

This action was brought by plaintiff, an electronics technician,[1] and his class seeking $5,000,000 in damages and other relief on the ground that defendant did not pay them the prevailing wages required by the Davis-Bacon Act (40 U.S.C. § 276a *et seq.*) for their construction work. Defendant is a not-for-profit consortium of universities formed to facilitate scientific research and to design, construct and operate the Fermi National Accelerator Laboratory in Batavia, Illinois. This facility is a 6800–acre

---

1. Plaintiff was employed by defendant at the Fermi National Accelerator Laboratory from 1972 until he resigned three years later.

Kane County site containing laboratories, research offices, related facilities, and the world's largest proton accelerator system. It is used to carry out research in the field of high-energy physics by numerous scientists from institutions located throughout the world. (App. 50 n. 3.) The Davis-Bacon Act requires government construction contracts to contain a provision stating that the minimum wages to be paid various classes of laborers and mechanics shall be based upon the wages to be determined by the Secretary of Labor to be prevailing where the work is to be performed. 40 U.S.C. § 276a(a). We held in *McDaniel v. University of Chicago,* 512 F.2d 583 (7th Cir. 1975), reaffirmed on remand, 548 F.2d 689 (7th Cir. 1977), certiorari denied, 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780, that employees have an implied private right of action to sue for wages due under the Act. Our decision in the present case flows directly from the *McDaniel* opinions. The complications arise only from the procedural posture of the case and from defendant's renewed attempts to establish an exhaustion requirement.

Plaintiff and his class alleged in their "First Cause of Action" (hereinafter "Count I") that defendant violated the Davis-Bacon Act by not paying members of plaintiff's class the minimum wages "required to be paid pursuant to the said contract and the prevailing wage determinations of the Secretary of Labor and the Davis-Bacon Act" (App. 2). Count I was dismissed in an unreported October 8, 1975, memorandum opinion and order of Judge McGarr. How-

ever, that order did not dismiss the remaining six Counts of the complaint.

On August 10, 1976, Judge Leighton, to whom the class action had been transferred, certified the plaintiff class.[2] Discovery was apparently stayed in February 1977.[3] In March 1977, defendant filed a motion for summary judgment. In November 1977, Judge Leighton handed down a memorandum order granting that motion. The court dated that in Count II the plaintiff class alleged that the contract fell within the purview of the Davis-Bacon Act and that the contract by its terms provides for "payment to members of plaintiff class at the legal wage rate applicable to work actually performed." In this memorandum order, the district court noted that no Davis-Bacon Act stipulations requiring the payment of prevailing wages were ever made a part of the contract between defendant and the United States.[4] The court said that the plaintiff class was relying on Article XXXIII of the contract providing that the contract did not contemplate the performance of work by defendant with its own employees "which the Commission [now the Energy Research and Development Administration (ERDA)[5]] determines is subject to the Davis-Bacon Act" and that such work was to be procured by subcontracts containing "the [Davis-Bacon] provisions relative to labor and wages required by law." The court then held that the contract failed to contain the "requisite Davis-Bacon Act specifications for maintenance of the claims stated in Count II" and accordingly dismissed that Count. Counts III through VII of the com-

2. The class was described as follows:

"All 'mechanics and/or laborers' employed by defendant pursuant to Contract No. AT(49-8)-3000 between defendant and the United States of America 'for construction, alteration and/or repair, including painting and decorating, of public buildings and public works of the United States' who have been paid wages less than 'the wages * * * determined by the Secretary of Labor to be prevailing for the various classes of laborers and mechanics * * * in the city, town, village, or other civil subdivision of the State' in which the work was performed, all as stated and defined in the Davis-Bacon Act, 40 U.S.C. § 276a, *et seq.*"

3. Plaintiff apparently relies on Judge Leighton's minute order of February 18, 1977, stating "P/T completed" to show discovery was thereby stayed. Defendant's brief nowhere disputes the stay. An earlier discovery stay was ordered by Judge McGarr on December 22, 1975.

4. In this respect, the court relied on an affidavit of John R. Frazier, chief legal counsel for the Fermi National Accelerator Laboratory. As will be seen, this affidavit does not resolve the controversy.

5. ERDA is the successor to the Atomic Energy Commission.

plaint were based on state claims, and the district court declined to assert pendent jurisdiction over them "due to the legally insubstantial nature of the federal claims." Therefore, the complaint was dismissed in its entirety.

No notice of appeal was filed with respect to Judge McGarr's dismissal of Count I of the complaint, so that the principal question before us is whether Count II, asserting that defendant breached contractual obligations to the members of plaintiff class, was properly dismissed. At the outset, the parties disagree on what was decided by Judge McGarr and therefore what remained to be decided by Judge Leighton. The defendant insists that only two narrow fact questions were left open by Judge McGarr: (1) whether the contract actually contained Davis-Bacon Act stipulations and, if so, (2) whether Davis-Bacon Act work was performed by members of the plaintiff class. If this were all that was left for Judge Leighton to decide, the affidavit that there were no Davis-Bacon Act stipulations (n.4 *supra*) might require affirmance of the summary judgment. However, we do not believe that Judge McGarr reduced the suit to a simple case of whether express wage stipulations in the contract had been breached. On the contrary, in dismissing Count I Judge McGarr held only that if the contract was not a Davis-Bacon Act contract plaintiff could not recover.[6] Clearly if a contract contains the required wage stipulations, this would show that it was a Davis-Bacon Act contract. Judge McGarr apparently recognized, however, and we agree, that clauses in the contract other than the wage stipulations may reveal that the contract was one for Davis-Bacon Act work (App. 25).

Thus two theories of recovery remained open to the plaintiff class after Judge McGarr's dismissal: (1) there may have been Davis-Bacon Act stipulations in the contract or (2) there may have been other evidence that the contract was one for Davis-Bacon Act work, in which case the required stipulations arguably become a part of the contract by operation of law. Judge Leighton's grant of summary judgment was based on the affidavit (n.4 *supra*) tending to disprove only the first of these two theories. We hold that summary judgment was improperly entered against plaintiff and his class because the required wage stipulations were incorporated by operation of law.

### The Davis-Bacon Act Applies to Construction, Alteration or Repair Work Performed by Defendant

The key provision in the contract between defendant and the United States Government acting through ERDA is Article XXXIII which provides in pertinent part as follows:

"This contract does not contemplate the performance of work by the Association, with its own employees, which the Commission determines is subject to the Davis-Bacon Act. Such work, if any, performed under this contract shall be procured by subcontracts which shall be subject to the written approval of the Commission and contain the provisions relative to labor and wages required by law to be included in contracts for the construction, alteration, and/or repair, including painting and decorating, of a public building or public work."

In this lawsuit, plaintiff contends that defendant's own employees performed and are performing construction, alteration and repair work at the Fermi Laboratory, so that the Davis-Bacon Act wage provisions are applicable to the work done by plaintiff and

---

**6.** There is some support for the proposition that if work covered by the Davis-Bacon Act happens to be performed under a contract which did not intend that such work be performed by anyone, it is not covered by the Act. 40 Comp.Gen. 565 (1961). This interpretation, however, raises the additional question of who is to decide whether a contract is subject to the Act. Judge McGarr appeared to accept defendant's contention that authority to make this determination was accorded exclusively to the executive departments so that their decisions in this regard are not subject to judicial review (App. 23). We note in addition that even if such administrative action is reviewable, there may be an exhaustion requirement. We do not decide any of these questions, since they are not before us.

his class. We agree that if the defendant actually performed such work with its own employees at the Fermi Laboratory, they became entitled to the prevailing wages in Kane County where the work was to be performed. This conclusion follows from our holding in *McDaniel v. University of Chicago, supra.*

*McDaniel* involved a government contract clause which is virtually identical to Article XXXIII of this contract. The contract at issue in *McDaniel* was between the Atomic Energy Commission and the University of Chicago for operation of the Argonne National Laboratory. That contract barred the University of Chicago from construction work of a kind subject to the Davis-Bacon Act. As with Article XXXIII of the present contract, the University of Chicago was to have all Davis-Bacon Act work performed by subcontractors.[7] We held that the construction or alteration work performed by the University of Chicago was subject to the provisions of the Davis-Bacon Act even though the contract lacked a stipulation requiring the payment of Davis-Bacon Act wage rates, stating:

> "There is no question but that this government contract was subject to the provisions of the Davis-Bacon Act. Accordingly 40 U.S.C. § 276a required the specifications to 'contain a provision stating the minimum wages to be paid various classes of laborers and mechanics which shall be based upon the wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar

to the contract work' in the place of performance, and required any contract based on the specifications to contain certain stipulations concerning payment of mechanics and laborers by the contractor or subcontractor." (512 F.2d at 584.)

Similarly here, the provisions of the Davis-Bacon Act must be read into Article XXXIII when, pursuant to a contract requiring Davis-Bacon Act work, the defendant performs "construction, alteration, and/or repair * * * of public buildings or public works of the United States * * * which requires or involves the employment of mechanics and/or laborers." Section 1 of the Davis-Bacon Act applies to such work in government contracts in excess of $2,000 and mandates that an employer must pay "wages that will be determined by the Secretary of Labor to be prevailing for the corresponding classes of laborers and mechanics employed on projects of a character similar to the contract work in the * * * subdivision of the State in which the work is to be performed * * *." 40 U.S.C. § 276a.

Indeed, in a January 23, 1973, letter from the Atomic Energy Commission's Chicago Operations Office Manager to the president of the defendant, both those parties foresaw that conditions might arise which might make it necessary for the defendant to perform Davis-Bacon Act work and in such instance to modify the contract to incorporate the Davis-Bacon Act provisions relative to labor and wages. Since under *McDaniel I* the contract was already so modified by operation of law, amendments to the contract were not needed to accomplish that result.

---

7. The applicable clause of the *McDaniel* contract between the University of Chicago and the Atomic Energy Commission provided:

> "26.5 *Davis-Bacon and Other Labor Provisions for Construction Subcontracts.*
>
> "The University and the Commission have agreed upon a procedure under which the Commission will determine when work to be undertaken at the Laboratory Facilities is covered by the Davis-Bacon Act. When it is determined that the Davis-Bacon Act does cover a particular work project, the University shall procure by subcontract the covered work. Any subcontract entered into under this section shall contain the provisions rela-

tive to labor and wages required by law to be included in contracts for the construction, alteration and/or repair, including painting and decorating, of a public building or public work. When requested by the Commission, any such subcontract shall be submitted for Commission approval.

> \* \* \* \* \* \*

> "Supplement No. 16, Appendix D."

(quoted at p. 1a of the Solicitor General's *amicus curiae* brief on petition for a writ of certiorari from the Supreme Court in *University of Chicago and Argonne v. McDaniel,* 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780.)

*McDaniel* was not an isolated instance of reading applicable statutory requirements into government contracts. We were merely following precedents established as early as 1827 and applied consistently thereafter.[8] Because the provision to pay the prevailing wage rate was incorporated by operation of law, the affidavit relied upon by the district court to the effect that no Davis-Bacon Act "stipulations requiring the payment of prevailing wages have ever been made a part of or incorporated in" the contract (see n.4 *supra*) is insufficient to support the grant of summary judgment. Therefore it was unnecessary for plaintiff to tender a counter-affidavit.

It is uncontested that the Secretary of Labor has published general wage determinations in decisions published in the Federal Register that are applicable to labor on government projects in Kane County, Illinois, where the Fermi Laboratory is located and where the defendant's alleged construction activity has been performed.[9] Therefore the district court was mistaken in concluding that to sustain plaintiff's position would require it to make wage determinations for the parties.

### Exhaustion of Administrative Remedies Is Not Required

If defendant or our own research had uncovered administrative regulations affording plaintiff and his class relief in this situation, we might require recourse to that remedy before permitting this lawsuit to proceed. The Davis-Bacon Act itself does not contain a provision requiring exhaustion of administrative remedies in this kind of case. Moreover, we rejected such an argument in the second *McDaniel* case where the University of Chicago had argued that administrative procedures afforded adequate relief to the individual employees of a government contractor.[10] In the *McDaniel* cases, there was no showing that the plaintiff and his class had attempted to secure administrative relief, and in according them a judicial remedy we necessarily decided that there was no requirement that they first seek redress from the contractor or the Department of Labor. Moreover, the administrative procedures seem to be aimed at contractor compliance with the Davis-Bacon Act. Defendant has not shown that the Secretary of Labor has any authority to order a contractor to pay more for Davis-Bacon work already completed.[11] As the

8. See, *e. g., Ogden v. Saunders,* 25 U.S. (12 Wheat.) 212, 6 L.Ed. 606 (1827); *Wood v. Lovett,* 313 U.S. 362, 370, 61 S.Ct. 983, 85 L.Ed. 1404; *G. L. Christian & Associates v. United States,* 312 F.2d 418, 160 Ct.Cl. 1, 320 F.2d 345, 160 Ct.Cl. 58 (1963), certiorari denied, 375 U.S. 954, 84 S.Ct. 444, 11 L.Ed.2d 314; *United States v. New Orleans Public Service Inc.,* 553 F.2d 459, 469 (5th Cir. 1977); *Compagnie Générale Transatlantique v. American Tobacco Co.,* 31 F.2d 663, 666 (2d Cir. 1929); *City of Tullahoma v. Coffee County,* 204 F.Supp. 794, 800 (E.D.Tenn.1962); 3 Corbin on Contracts, § 551; 4 Williston on Contracts, § 615 at p. 621; Dees and Ginsberg, *Contract Interpretations and Defective Specifications* (Government Contracts Monograph No. 4, 1975 ed., George Washington University) 1–4.

*United States v. Joseph A. Holpuch Co.,* 328 U.S. 234, 66 S.Ct. 1000, 90 L.Ed. 1192, on which defendant relies, is not to the contrary. It did not concern the question whether applicable statutory terms must be read into government contracts. *International Association of Machinists v. Hodgson,* 169 U.S.App.D.C. 142, 515 F.2d 373 (1975), cited by defendant at oral argument, is also consistent with our holding. That case involved the Secretary of Labor's

decision to exercise his discretion not to issue a wage determination under the Service Contract Act. The Davis-Bacon Act, however, confers no such discretion on him.

9. See 43 F.R. 11379–11383 containing the introductory notice to a recent compilation of the Secretary's wage determinations and decisions specifically applicable to government project work in Kane County. 42 F.R. 30108–30111, 35522, 39847–39848 contain examples of such decisions.

10. See p. 12 of supplemental brief for defendants-appellees in *McDaniel v. University of Chicago,* 548 F.2d 689 (7th Cir. 1976), certiorari denied, 434 U.S. 1033, 98 S.Ct. 765, 54 L.Ed.2d 780.

11. Enforcement through contract termination and debarment from future contracts is provided for. 40 U.S.C. § 276a–1; 29 C.F.R. § 5.7(d); 29 C.F.R. § 5.6(b)(1). Additionally, the regulations provide for suspension of payments under the contract if the agency (here ERDA) determines the contractor has failed to "comply with labor standards stipulations * * *" (29 C.F.R. § 5.9). This remedy seems inadequate

Government itself recognized in *McDaniel II*,

"Neither the statute nor the regulations promulgated thereunder provide any administrative remedy in favor of an employee who has been injured by the failure to include the prevailing-wage provisions in a contract." (Solicitor General's *amicus curiae* brief opposing the petition for a writ of certiorari in *University of Chicago and Argonne v. McDaniel*, 434 U.S. 1033, at 25, n.20, 98 S.Ct. 765.) Instead, the regulations are either inadequate as to this class or are merely detailed guidelines for determining what constitutes Davis-Bacon work.[12] While such regulations presumably facilitate contractor compliance, they do not assure a remedy to employees.[13]

The cases cited by defendant for the proposition that the administrative remedies are adequate involved contracts which did contain Davis-Bacon Act stipulations. The disputes in those cases focused on the proper classification of work [14] or the deter-

mination of wage rates.[15] These and other cases involving the finality of the Secretary of Labor's decisions regarding wage rates and job classifications are not germane to the central question in this case, which is whether the required wage rate stipulations are incorporated into the contract as a matter of law. That is not a question on which deference to agency expertise is appropriate.

In addition, defendant's reliance on Section 4 of the Act (40 U.S.C. § 276a–3) [16] is misplaced since defendant has been unable to identify anything in the Atomic Energy Act or any other federal statute that authorizes ERDA to establish specific wage rates. While 41 C.F.R. § 9–15.5006(i) recommends that wages as well as other costs be set out in ERDA contracts, this does not authorize ERDA to establish non Davis-Bacon Act rates in contracts to which that Act applies. Even if this were the intent of the regulation, since it is not authorized by law it could not qualify as an exception under Section 4 of the Act.[17]

to assure the employees of a full recovery in the present case for three reasons: (1) it is based on the assumption that there are stipulations in the contract, (2) it provides for withholding payment only until the violations are discontinued or (apparently in the agency's discretion) enough has been withheld to compensate the employees, and (3) withholding funds is hardly feasible in this case since, as counsel for defendant advised us at oral argument, the defendant is merely a conduit for federal funds. It is thus not clear that such a contractor can or should be required to make restitution out of its own unrelated funds.

Finally, the regulations provide that "[t]he Agency Head may, in appropriate cases * * request that restitution be made * * *." (29 C.F.R. § 5.10.) Apart from the fact that the precatory language of this regulation gives employees no sure means of redress, this would not seem to be an "appropriate case" for such restitution in view of the defendant's self-styled conduit nature.

**12.** See n.11 *supra* and 41 C.F.R. §§ 9–18.701, 9–18.704, 9–18.740.

**13.** The Disputes clause contained in Article XIX of the contract with respect to the resolution of controversies between the contracting parties is inapplicable because it relates only to questions of fact whereas the question before us is essentially one of law, *viz.*, whether the provisions of the Davis-Bacon Act apply to

construction, alteration or repair work performed by defendant's employees, and because this is not a controversy between the contracting parties.

**14.** *North Georgia Building & Construction Trades Council v. Department of Transportation*, 399 F.Supp. 58 (N.D.Ga.1975); *Framlau Corporation v. Dembling*, 360 F.Supp. 806 (E.D. Pa.1973); *In re Stanford Linear Accelerator Center*, 16 Wage-Hour Cases 851 (Wage Appeals Board, Department of Labor 1965).

**15.** *International Union of Operating Engineers v. Arthurs*, 355 F.Supp. 7 (W.D.Okl.1973), affirmed, 480 F.2d 603 (10th Cir. 1973).

**16.** Section 4 of the Act provides:
"*Effect on other Federal laws*
"Sections 276a to 276a–5 of this title shall not be construed to supersede or impair any authority otherwise granted by Federal law to provide for the establishment of specific wage rates."

**17.** There is other evidence that ERDA is not authorized to set wage rates that do not comply with the Davis-Bacon Act. Executive Order 10789, pursuant to 50 U.S.C. § 1431, authorizes the Secretary of the Atomic Energy Commission (predecessor to ERDA) to enter into contracts containing certain limitations. Paragraph 13 of that Order specifically states that

Plaintiff must now be permitted to resume discovery (or employ other suitable means) to determine whether defendant used plaintiff and his class to perform construction, alteration or repair work at the Fermi Laboratory. If so, under the Davis-Bacon Act they will be entitled to recover wages that the Secretary of Labor has determined to be prevailing for the corresponding classes of laborers and mechanics employed on similar projects in Kane County, Illinois. Since the district court had jurisdiction over Count II, it also had pendent jurisdiction to decide state claims presented in Counts III–VII.

The judgment dismissing the complaint is reversed and the cause is remanded for further consideration consistent with this opinion.

nothing in the Order shall be construed to allow the Secretary to set aside the requirements of the Davis-Bacon Act. If he already had that power by federal law, this provision in the Executive Order would be both superfluous and unavailing.