George D. LAMB, appellant,

v.

AMALGAMATED LABOR LIFE INSURANCE COMPANY, Appellee.

No. 78–1863.

United States Court of Appeals, Eighth Circuit.

Submitted July 9, 1979.

Decided July 13, 1979.

George D. Lamb, St. Louis, Mo., filed brief pro se.

Don R. Sherman of Rosenberg, Weiss, Goffstein, Kraus & Seigel, Clayton, Mo., filed brief for appellee.

Before HEANEY, STEPHENSON and McMILLIAN, Circuit Judges.

PER CURIAM.

This dispute arose as a result of the failure of appellee Amalgamated Labor Life Insurance Company (Amalgamated) to pay insurance benefits claimed by appellant George D. Lamb. The district court[1]

1. The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

granted Amalgamated's motion to dismiss on the grounds that some of Lamb's claims were barred by the applicable statute of limitations and that the remaining claims did not satisfy the jurisdictional amount requirement of 28 U.S.C. § 1332. We affirm.

Amalgamated had issued two policies on February 5, 1970 insuring Lamb against loss as a result of illness, disability and accident. The policies provided, *inter alia*, (1) for payment of $100 per month during the period of the insured's total disability for a maximum of five years, (2) for a monthly indemnity of $200 while hospitalized for a maximum of one year, and (3) for a monthly indemnity of $100 while confined at home for a maximum of three months.

On December 15, 1970, while the policies were in effect, Lamb was seriously injured in an automobile accident; as a result of the accident Lamb claims he was hospitalized for 55 days in the first eleven months following the accident, after which he was confined to bed at home for three years and eight months. Lamb began filing claims for benefits in early 1971, and for the period December 15, 1970 to July 24, 1971 was paid approximately $1,716.68. Lamb disputes the adequacy of the amounts paid by Amalgamated for this period. He also alleges that his wife on his behalf filed additional claim for benefits for the period December 15, 1970 to September 20, 1972, but that Amalgamated failed to pay those claims.

In his complaint, Lamb alleged constitutional and civil rights violations, fraud, and breach of contract. He sought $5,200 in special damages, $38,000 in compensatory damages and $86,000 in punitive damages. The district court dismissed Lamb's claims of constitutional and civil rights violations and fraud on the grounds that they were barred by the applicable statute of limitations. Mo.Rev.Stat. § 516.120 (Vernon 1952). The court dismissed the breach of contract claim, founded on diversity jurisdiction, on the ground that since the maximum possible recovery under the policies was $8,700.00, the claim failed to satisfy the jurisdictional amount set forth in 28 U.S.C. § 1332.

The exact nature of Lamb's various claims is difficult to determine; the complaint and the brief on appeal were written by Lamb himself, a layman, and do not clearly delineate the claims he is attempting to raise. However, from his factual allegations, and from copies of correspondence he received, an account of the series of events upon which he bases his claims may be gleaned. In late September, 1972, Lamb received correspondence from Amalgamated's claims department informing him that Amalgamated had not received all information needed to complete his file but was taking the necessary steps to obtain the information, and would process his claim as soon as possible. In September or October, 1972, Amalgamated claims it exercised its right to have Lamb undergo a physical examination, which he refused to do. Lamb denies that Amalgamated ever requested that he undergo a physical examination. On October 27, 1972, Amalgamated sent Lamb a letter informing him that, because of his refusal to undergo an examination, Amalgamated refused to assume any liability for his claim. Lamb does not deny receipt of this letter.

Shortly thereafter, Mrs. Lamb, on behalf of her husband, filed a complaint with the Missouri Division of Insurance (MDI). In response to MDI's inquiry, Amalgamated sent MDI a detailed history of its communications with Lamb. In late November or early December, 1972, MDI apparently forwarded a copy of Amalgamated's response to the Lambs.

Lamb's claims of civil rights and constitutional violations are founded on his belief that certain employees of Amalgamated conspired to deprive him of benefits rightfully his under the provisions of the policy. In support of his claim he points to the facts that the amounts actually paid to him were inadequate, he was never notified of Amalgamated's requirement that he be examined, he was denied his arbitration privileges under the contracts, and Amalgamated arbitrarily terminated his insurance coverage.

## I. Statute of Limitations

The court held that the statute of limitations applicable to all claims except the breach of contract claim was Mo.Rev.Stat. section 516.120 (Vernon 1952)[2] which provides that certain actions must be brought within a five year period. The court held that the cause of action accrued no later than November, 1971. Since Lamb did not file his complaint until August 9, 1978, the court found his claims to be time-barred.[3]

■ The district court's reasoning was correct. By its terms, section 516.120 applies to Lamb's claim of fraud. Section 516.120 also was appropriately applied to Lamb's claim of violation of his civil rights. *Greene v. Carter Carburetor Co.*, 532 F.2d 125, 127 (8th Cir. 1976); *Green v. McDonnell Douglas Corp.*, 463 F.2d 337, 340 (8th Cir. 1972), *vacated on other grounds*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Cf. Tatum v. Golden*, 570 F.2d 753 (8th Cir. 1978) (Iowa law).

■ Furthermore, the district court properly applied the statute to the facts of this case. Under Missouri law, the statute of limitations begins to run when a claim for relief accrues; a claim for relief accrues when a right exists to institute a suit for its enjoyment. *Chemical Workers Local 1744 v. Arnold Sav. Bank*, 411 S.W.2d 159, 164 (Mo.1966); *De Paul Hosp. School of Nursing, Inc. v. Southwestern Bell Tel. Co.*, 539 S.W.2d 542, 546 (Mo.App.1976); *State v. Robertson*, 417 S.W.2d 699, 700 (Mo.App.

1967). All actions by Amalgamated's employees which would give rise to civil rights claims or claims of fraud occurred no later than October 27, 1972, when Amalgamated sent Lamb the letter informing him that it refused to assume liability under the contracts of insurance. Consequently, the statute of limitations began running no later than October 27, 1972, and the suit filed on August 9, 1978, was therefore not filed within the statutory period.

Lamb alleges that his claims did not accrue until 1976, when he became well enough to handle his business affairs; he contends that from December 15, 1970 to 1976 his physical condition precluded him from doing so, and that he had no knowledge of Amalgamated's actions during that period.

■ Under Missouri law, the statutes of limitations may be suspended or tolled only by specific disabilities or exceptions enacted by the legislature, and courts cannot extend those exceptions. *Neal v. Laclede Gas Co.*, 517 S.W.2d 716, 719 (Mo.App.1974); *State v. Campbell*, 511 S.W.2d 141, 148 (Mo.App. 1974). The exceptions are set out in Mo. Rev.Stat. sections 516.170 and 516.280 (Vernon Supp.1979). The exceptions established by section 516.170 include the following conditions in effect as of the time the cause of action accrued: (1) The person is under the age of 21, (2) is insane, (3) is imprisoned on a criminal charge, or (4) is in execution

---

2. This section provides:

516.120. What actions within five years

Within five years:

(1) All actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 516.110, and except upon judgments or decrees of a court of record, and except where a different time is herein limited;

(2) An action upon a liability created by a statute other than a penalty or forfeiture;

(3) An action for trespass on real estate;

(4) An action for taking, detaining or injuring any goods or chattels, including actions for the recovery of specific personal property, or for any other injury to the person or rights of another, not arising on contract and not herein otherwise enumerated;

(5) An action for relief on the ground of fraud, the cause of action in such case to be

deemed not to have accrued until the discovery by the aggrieved party, at any time within ten years, of the facts constituting the fraud.

3. The district court did not discuss whether Lamb actually stated a claim under sections 1981, 1983, and 1985. Nowhere does Lamb allege that Amalgamated's actions were motivated by racial discrimination, as required under section 1981, *Garner v. Giarrusso*, 571 F.2d 1330 (5th Cir. 1978), or an otherwise class based discriminatory animus, as required under section 1985. *Sebastian v. United States*, 531 F.2d 900, 904 (8th Cir. 1976), *cert. denied*, 429 U.S. 856, 97 S.Ct. 153, 50 L.Ed.2d 133 (1976). Nor does Lamb claim any state action, as required under section 1983.

under a sentence of a criminal court for a term less than for his natural life. Section 516.280 provides:

> If any person, by absconding or concealing himself, or by any other improper act, prevent the commencement of an action, such action may be commenced within the time herein limited, after the commencement of such action shall have ceased to be so prevented.

■ Lamb's contention that he was ill and unable to represent himself falls within none of the exceptions to the statute of limitations established by either section 516.170 or section 516.280. Since Lamb has not pleaded an appropriate exception to the operation of the statute of limitations, his civil rights and fraud claims are time-barred.

## II.  *Amount in Controversy*

Although the ten year statute of limitations applied to Lamb's breach of contract claim, the district court held that since Lamb was unable to recover more than $10,000 under the terms of the policy the court lacked jurisdiction under 28 U.S.C. § 1332.

Lamb argues first that the maximum amount of benefits payable under the policies is $12,300; and that therefore the court does have subject matter jurisdiction. It is apparent that Lamb is confusing the total amount payable under the policies with the amount he has a right to claim under the policies. In his complaint he sought only $5,200 in damages as benefits due him under the policies.

Lamb also argues that, in addition to the $5,200 in damages referred to above, he sought $38,000 in compensatory damages and $86,000 in punitive damages. Therefore, he argues, the amount in controversy exceeds $10,000.

■ The district court did not discuss Lamb's claims for additional damages in dismissing his claim. However, if the compensatory and punitive damages sought by Lamb are legally recoverable under Missouri law, they must be considered in determin-

ing whether the requisite amount in controversy is involved. 1 Moore's Federal Practice ¶ 0.93[4], at 895 (2d ed. 1978).

■ Under Missouri law, punitive damages are not ordinarily allowable in a suit for breach of contract unless the breach was tortious in nature. *Otto v. Imperial Cas. & Indemn. Co.*, 277 F.2d 889, 893 (8th Cir. 1960); *Robinson v. Riverside Concrete Inc.*, 544 S.W.2d 865, 871 (Mo.App.1976); *Wallick v. First State Bank of Farmington*, 532 S.W.2d 520, 524 (Mo.App.1976). In order to state a claim for punitive damages, the plaintiff must allege "facts indicating that the defendant maliciously, wilfully, intentionally or recklessly injured the plaintiff by his tortious act." *Dyer v. General American Life Ins. Co.*, 541 S.W.2d 702, 706 (Mo.App.1976).

■ In this case, Lamb's tort claims are barred by the statute of limitations; therefore, his claim for punitive damages, not being legally recoverable, need not be considered in determining the amount-in-controversy question.

■ In Missouri, the general measure of damages for breach of contract is that

> compensation should be equal to the injury, subject to the condition that the damages be confined to those naturally and proximately resulting from the breach, and be not uncertain or speculative, nor outside the contemplation of the parties.

*Mayfield v. George O. Richardson Mach. Co.*, 208 Mo.App. 206, 231 S.W. 288, 293 (1921). The question is whether the injury in this context is confined to the benefits payable under the terms of the contract. The district court implicitly took the position that it was, since it did not consider Lamb's claims for compensatory damages. Lamb, on the other hand, contends that Amalgamated's failure to pay his claims caused his health to deteriorate because he could not afford to pay for medical drugs and treatment, and that as a result his chances for recovery have been greatly reduced. He also alleges that his financial credit was "wiped out," causing him to suffer great mental anguish. He contends that he is entitled to recover damages for these injuries.

There are two Missouri statutes establishing the right to special damages based on a percentage of the loss *under the policy*, upon an insurance company's vexatious refusal to pay a claim. Mo.Rev.Stat. §§ 375.-296 (Vernon 1968) and 375.420 (Vernon Supp.1979).[4] There is some indication that these statutes have been construed by at least one Missouri trial court as establishing the exclusive remedy for additional damages against the insurer beyond contract damages. *See Dyer v. General American Life Ins. Co., supra,* 541 S.W.2d at 706.[5]

The district court determined that under applicable Missouri law, Lamb had not stated a claim for the requisite amount in controversy. This court gives great weight to the conclusion of the local trial judge on questions of state law. *Bergstresser v. Mitchell,* 577 F.2d 22, 25 (8th Cir. 1978); *Luster v. Retail Credit Co,* 575 F.2d 609, 614 (8th Cir. 1978). We are unable to say that the district court erred in its interpretation of Missouri law; consequently, the judgment is affirmed.

Affirmed.

4. These statutes provide:
375.296. Additional damages for vexatious refusal to pay.
In any action, suit or other proceeding instituted against any insurance company, association or other insurer upon any contract of insurance issued or delivered in this state to a resident of this state, or to a corporation incorporated in or authorized to do business in this state, if the insurer has failed or refused for a period of thirty days after due demand therefor prior to the institution of the action, suit or proceeding, to make payment under and in accordance with the terms and provisions of the contract of insurance, and it shall appear from the evidence that the refusal was vexatious and without reasonable cause, the court or jury may, in addition to the amount due under the provisions of the contract of insurance and interest thereon, allow the plaintiff damages for vexatious refusal to pay and attorney's fees as provided in section 375.420. Failure of an insurer to appear and defend any action, suit or other proceeding shall be deemed prima facie evidence that its failure to make payment was vexatious without reasonable cause.
375.420. Vexatious refusal to pay claim, damages for, exception.

In any action against any insurance company to recover the amount of any loss under a policy of automobile, fire, cyclone, lightning, life, health, accident, employers' liability, burglary, theft, embezzlement, fidelity, indemnity, marine or other insurance except automobile liability insurance, if it appears from the evidence that such company has refused to pay such loss without reasonable cause or excuse, the court or jury may, in addition to the amount thereof and interest, allow the plaintiff damages not to exceed twenty percent of the first fifteen hundred dollars of the loss, and ten percent of the amount of the loss in excess of fifteen hundred dollars and a reasonable attorney's fee; and the court shall enter judgment for the aggregate sum found in the verdict.

5. Lamb did not cite sections 375.296 and 375.-420 in his prayer for relief. In any event his maximum recovery including amounts recoverable under these statutes would be $9,610. Since the maximum recoverable under the policies is $8,600, Lamb could obtain a maximum of $1,010 in special damages for vexatious refusal to pay [20% of the first $1,500 is $300 and 10% of the loss in excess of $1,500—$7,-100—would be $710.] Since Lamb is proceeding pro se he could not recover attorney fees.